In the Matter of John A. BLINT, Debtor.

VAN METRE, HANSON, CLARKE & SCHNITZLER, Plaintiff,

Kathleen Blint, Intervening Plaintiff,

v.

John A. BLINT, Defendant.

Adv. No. 81–0180.

United States Bankruptcy Court, W. D. Wisconsin.

June 21, 1982.

Stephen J. Meyer, Van Metre, Hanson, Clarke, Schnitzler & Meyer, Madison, Wis., for Van Metre, Hanson, Clarke, Schnitzler & Meyer, plaintiff.

William T. Henderson, Collins & Henderson Law Offices, Beloit, Wis., for Kathleen Blint, intervening plaintiff.

Robert M. Whitney, Walsh, Walsh & Sweeney, S. C., Madison, Wis., for Suki Choi.

Frank A. Ross, Jr., Ross & Chatterton Law Office, Madison, Wis., for John A. Blint, debtor/defendant.

Michael Kepler, Paskin & Kepler, Madison, Wis., trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

This adversary proceeding was initiated by the law firm of Van Metre, Hanson, Clarke & Schnitzler (hereinafter Van Metre) against debtor John A. Blint. Kathleen Blint, the first of Blint's two ex-wives, intervened. The dispute concerns the disposition of 1.) proceeds from the sale of

Blint's personal property at a September 5, 1981, auction currently being held by the trustee in bankruptcy, Michael Kepler, and 2.) money payable to Blint from the Westphal Profit Sharing Plan ("Westphal").

Van Metre claimed the proceeds from the sale of exempt property by virtue of an oral assignment made by Blint to pay for legal services. (Van Metre represented Blint in his bankruptcy case until September 1, 1981, when Blint hired Frank Ross, Jr.) The law firm claimed that $860.00 of the proceeds were from the sale of nonexempt property and should remain part of the estate. Van Metre has previously received an order granting its claim for fees an administrative priority. Van Metre made no claim on the profit sharing plan.

Kathleen Blint intervened in the adversary proceeding, claiming both the exempt proceeds and the profit sharing plan pursuant to a state court order dated November 6, 1981. The state court had found Blint in arrears in his alimony and support payments and ordered that the money from each of the sources be turned over to the First Wisconsin Bank of Janesville to be held in trust for the minor children of the parties. (Ms. Blint had been granted relief from stay to pursue her remedies for enforcement of her support rights in state court on July 13, 1981.) Ms. Blint acknowledged that Suki Choi, Blint's second wife, had a prior right to satisfy her claim against Blint from the profit sharing plan pursuant to an order of this court.

Blint argued that the proceeds from the exempt property should be paid to Frank Ross, Jr. under a written assignment dated September 3, 1981, for payment for legal services. Similarly Blint claimed that his interest in the profit sharing plan, after Suki Choi satisfied her claim, had been assigned to his parents, Albert and Laura Blint, in consideration for their release of a mortgage on his homestead. Frank Ross, Jr. and Albert and Laura Blint were never joined as parties to this action.

At the hearing held on February 7, 1981, Blint admitted that he had sold some of his property prior to the court-approved auction. Blint also admitted that some of the property sold was not listed on his schedules. Evidence was also introduced at the hearing that Blint had listed $860.00 worth of nonexempt household goods on his schedules, but was now claiming that all of the proceeds from the sale of household goods were entitled to be exempted.

■ Blint filed a "petition" to amend his exemption schedules to include household items on February 11, 1982. Both the trustee and Van Metre have objected to this amendment as not timely. In this district the question of exemption amendments is controlled by the test announced in *In Re Snow*, Adv.Pro. No. 80–0150 (Bkrtcy.W.D. Wis. Dec. 31, 1981) and applied in *In Re Bessel*, 18 B.R. 320, 8 B.C.D. 1155 (Bkrtcy. W.D.Wis.1982). This test considers:

a. Whether an adverse party's rights will be prejudiced if an amendment is allowed. This question is important both because the equitable issue of fairness is involved, and because evidence of cynical motives in not originally claiming the disputed property as exempt might be revealed.

b. Whether not allowing the amendment will cause undue hardship to a debtor who has acted in good faith. This must be considered because not allowing an exemption could thwart a deserved fresh start.

c. Whether there is a reasonable excuse for not claiming the exemption on the original schedule.

d. Whether there is a reasonable excuse for any delay in seeking the amendment. The first two considerations should carry the most weight.

■ Under this test the amendment should not be allowed. The amendment would prejudice the rights of Van Metre, which has filed this adversary proceeding and a claim for administrative expenses based on the exemptions originally claimed. In other cases in which this court allowed amendment far less had been done by any party in reliance on the original schedules. In *Snow* and *Bessel*, for example, the only action undertaken by an adverse party was

the trustee's objection to the amendment. In the present case, there would clearly be greater prejudice in allowing an amendment. Furthermore, the debtor will suffer no undue hardship if he is not allowed to exempt the additional $860.00. Blint will be left with a sizeable amount of exempt property under his original petition.

The last two parts of the test concern a reasonable excuse for not originally claiming the exemptions and for delay in seeking amendment. Neither is present in this case. Blint claims that he did not originally list the disputed property as exempt because it consisted of items worth only $.50 or $1.00. This explanation cannot be accepted as examination of the debtor's schedules reveals that the $860.00 figure comes from the nonexempt portion of assets with substantial value. Blint offered no explanation for waiting until after the hearing on the adversary proceeding had been concluded to attempt to amend his schedules. Thus, Blint may not amend his schedules to exempt more of the funds held by the trustee.

Van Metre argues that $860.00 of the auction proceeds should be deemed nonexempt funds and turned over to the estate. This argument is based on Blint's schedules which show $860.00 worth of nonexempt property in the debtor's possession at the time of bankruptcy. Van Metre argues that Blint either retained or privately sold partially exempt property and should reimburse the estate for the nonexempt portion of such property.

■ Van Metre's argument is clearly correct. In a chapter 7 liquidation case, all of the debtor's property initially becomes part of the bankruptcy estate. 11 U.S.C. § 541. The debtor is then allowed to exempt some property out of the estate, including his interest, not to exceed $200.00, in household items. 11 U.S.C. § 522(d)(3). If a debtor's interest in a particular item exceeds $200.00, he may still claim an exemption in that item, but the excess value is property of the estate. See In Re Smith, 8 B.R. 375 (Bkrtcy.S.D.Cal.1980), In Re Lambert, 10 B.R. 11, 6 B.C.D. 1124, 3 C.B.C.2d 37 (Bkrtcy.N.D.Ind.1980). In the present case, the debtor possessed property which was entitled to partial exemption at the time of filing. The nonexempt portion totalled $860.00. After filing he sold property of the estate without accounting to the trustee. To require at this time a full restoration of the value of the nonexempt property identified in the schedules, cannot under the circumstances be said to inequitably impair Blint's exemptions. The sum of $860.00 should be deducted from the proceeds of the auction sale and turned over to the trustee.

Having thus determined what portion of the proceeds from the sale is exempt, it is necessary to decide the distribution of the $1,182.72 of exempt funds among the various claimants. The threshold question is, of course, whether the bankruptcy court has jurisdiction over exempt property.

28 U.S.C. § 1471 (1978) contains the broad grant of jurisdiction to the bankruptcy court. Section 1471(b) and (c) provide:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

■ The legislative history of 28 U.S.C. § 1471 indicates that Congress intended this grant to include jurisdiction over the exempt property of the debtor:

Examples of matters that the bankruptcy court will be able to hear include all items listed by the Bankruptcy Commission in its proposed bill, H.R. 31, 94th Cong., 1st Sess. §§ 2–201(a), 2–201(b) (1975), or the equivalents to those items under title 11 as proposed by H.R. 8200, as well as all items that the bankruptcy courts are now able to bear under Bankruptcy Act

§ 2a(2A). H.R.Rep.No.595, 95th Cong., 1st Sess. 446 (1977).

Those sections of the "Commission Bill" referred to in the above excerpt from H.R. Rep. 595 include the following:

Section 2–201. Jurisdiction of the Bankruptcy Courts.

(a) *Controversies Arising out of a Case.* The jurisdiction of the bankruptcy courts shall extend to the determination of all controversies that arise out of a case commenced under this Act, including, without limitation, the following:

(2) *controversies involving property set apart to the debtor as exempt,* including the enforceability of claims, whether or not secured, against such property. . . .

28 U.S.C. § 1471(e) lends further support to this analysis as it conveys jurisdiction to the bankruptcy court over "all of the property, wherever located, of the debtor, as of the commencement of such case." These jurisdictional sections demonstrate that the bankruptcy court has jurisdiction over disputes relating to the debtor's exempt property. *See also* 1 Collier on Bankruptcy ¶ 3.01 (15th ed. 1982).

*In Re Grimes,* 6 B.R. 943, 7 B.C.D. 576, 3 C.B.C.2d 332 (Bkrtcy. D. Kansas 1980) considered the question of jurisdiction over exempt property. In *Grimes* the court considered a secured creditor's argument that because its claim was secured by property claimed as exempt, the court lacked jurisdiction over both the property and the underlying debt. The creditor argued that the court could therefore, not grant the debtor a discharge of any personal liability on the debt. The court used the jurisdictional statute discussed above as well as the Code to refute this argument:

That exempt property remains under the court's jurisdictional umbrella is reinforced by § 522(c) and (e) of the Bankruptcy Code. The liability of exempt property for certain debts and liens is provided at subsection (c); limitations on the enforceability of waivers of injunctions are specified at subsection (e). *A fortiori,* the bankruptcy court must have jurisdiction over exempt property to enforce the mandates of these provisions.

Consistently, § 362(a)(5) operates to stay any action to enforce liens against exempt property of the debtor to the extent that the liens secure claims that arose before the commencement of the case. A determination of property's exempt status is designed to benefit the debtor, not terminate the bankruptcy court's jurisdiction. 6 B.R. at 946, 7 B.C.D. at 578, 3 C.B.C.2d at 336 (footnotes omitted).

Considering, then, the jurisdictional statues and their legislative history, the available case law and the Code itself, it appears that this court has jurisdiction in the present dispute over exempt property.

Having determined that this court has jurisdiction, the question of joinder must be addressed. There are three parties to the present action, Van Metre, Kathleen Blint and John Blint. At trial evidence was produced which demonstrated that three other people have possible claims against the funds in controversy. These people are Frank Ross, Jr. who was purportedly assigned Blint's interest in the proceeds from the sale of exempt property and Albert and Laura Blint who were purportedly assigned their son's interest in Westphal. None of these potential claimants was made a party to this action. Thus, the question arises as to whether this court can proceed to adjudication without their joinder. Rule 719 of the Bankruptcy Rules of Procedure governs the joinder of parties. Rule 719 provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process shall be joined as a party in the proceeding if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the proceeding and is so situated that the disposition of the proceeding in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall

order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

This Rule is substantially identical to Rule 19 of the Federal Rules of Civil Procedure.

■ Ross and the senior Blints appear to be within the category of "persons to be joined if possible." Without their joinder the court cannot fully adjudicate the various claims to the disputed property. If this court were to award the property to the other parties, Ross and the Blints would have difficulty protecting their purported interests. Finally the trustee and Westphal might incur double liability. Because Ross and the Blints are not parties, the *res judicata* effect of any decree would not apply to them. If this court were to award the funds to the other claimants, Ross and the Blints could litigate this matter in another court and possibly prevail. The stakeholders could then be forced to pay twice.

■ What then is the proper remedy for the failure to join these parties? Rule 21 of the Federal Rules, which Bankruptcy Rule 721 makes applicable to adversary proceedings, provides that misjoinder of parties is not a ground for dismissal. There is, however, an exception to this rule when the party which has not been joined is an "indispensable party." 3A J. Moore, Federal Practice ¶ 19.05[2] at 19–85. The Seventh Circuit explained in *Tryforos v. Icarian Development Company*, 518 F.2d 1258 (7th Cir. 1975) the concept of indispensable parties:

As the Supreme Court indicated as long ago as *Mallow v. Hinde*, 25 U.S. (12 Wheat.) 123, 126, 6 L.Ed. 599:

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground.... We put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court."

Thus, the reason for dismissal, upon the failure to join an indispensable party, is not jurisdictional, but is based on a determination by the district court that, in its equitable discretion, it ought not to proceed to render a decision that might affect that absent party's rights. *See* discussion and cases cited in 3A J. Moore, Federal Practice ¶ 19.05[2], at 2209 & n. 7 (1974); 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1611 at 115–16 & n. 21 (1972). 518 F.2d at 1265 n. 26.

The Supreme Court defined indispensable parties in *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1855):

Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

The *Shields* formula was spoken of as "still valid today" in *Provident Tradesmen's National Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124, 88 S.Ct. 733, 745, 19 L.Ed.2d 936 (1968).

In the present case Ross and the Blints meet this test for an indispensable party. Van Metre and Kathleen Blint are asking that this court award them various property in which these non-joined parties claim an interest. For the court to do so would necessarily affect that interest. This court, if it granted the relief sought, would be in effect terminating possible rights in the property in question without allowing the holders of these rights an opportunity to be heard. This would clearly not be an equitable or permissible result.

Finally, it is proper for the trial court to raise the question of failure to join an indispensable party on its own motion, as the court noted in *Boris v. Moore*, 152 F.Supp. 602, 609 (E.D.Wis.1957). "There is no dispute that where a plaintiff has failed to join an indispensable party, the court must dismiss the action. Such a defect may be raised by the trial court or by an appellate court." *See also Haby v. Stanolind Oil & Gas Co.*, 225 F.2d 723 (5th Cir. 1955).

Upon the foregoing decision, which constitutes my findings of facts and conclusions of law in this proceeding, it is hereby

ORDERED that 1.) the amendment to schedule B–4 filed by the debtor John Blint on February 11, 1982 be and hereby is disallowed, 2.) the sum of $860.00 now held by the trustee be retained by the trustee to be administered as a part of the estate herein, 3.) to the extent this proceeding seeks direction in the distribution of exempt property now held by the trustee or in the possession of Westphal among the parties, this proceeding is dismissed without prejudice, and 4.) for a period of 30 days after the dismissal of this proceeding all stays and injunctions upon the transfer of exempt property in effect during the pendency of this proceeding whether by agreement or operation of law shall continue for the purpose of permitting the parties hereto an opportunity to replead and re-serve a proceeding based on the cause of action identified herein.

Judgment may be entered accordingly.