**In the Matter of Anthony MALAGESI and Joanne Malagesi, H/W, Debtors.**

**Civ. A. No. 83–3408.**

United States District Court,
E.D. Pennsylvania.

Feb. 22, 1984.

Marvin A. Goldberg, Philadelphia, Pa., for debtors.

Faith R. Greenfield, Philadelphia, Pa., for appellant.

Edward J. DiDonato, Philadelphia, Pa., for interim trustee.

MEMORANDUM OF DECISION

McGLYNN, District Judge.

Pending before this court is the appeal of creditor Girard Bank (appellant) from an order of the Bankruptcy Judge disapproving the reaffirmation agreement between appellant and the debtors Anthony and Joanne Malagesi (debtors). This court has jurisdiction pursuant to 28 U.S.C. § 1334(a). For the reasons noted below the order of the Bankruptcy Court denying approval of the reaffirmation agreement will be vacated and an order will be entered approving it.

*Facts*

On January 4, 1980 the debtors jointly executed as husband and wife and delivered to appellant their personal promissory note in the amount of $30,814.28. This note was secured by real property of the debtors. The purpose of this note was to provide the debtors with working capital for two businesses in which they had an interest, Lorimal, Inc., t/a The Gondolier and Sweetums, Ltd., t/a J–N–A Delicatessen. Thereafter, on December 17, 1981, the debtors jointly filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The debtors and appellant then entered into an agreement by which the debtors reaffirmed their outstanding indebtedness to the appellant under the note originally executed by them. The reaffirmation agree-

ment was signed by the parties on May 10, 1983.

The debtors entered into the reaffirmation agreement in order to induce the appellant to forebear from executing on a judgment entered by way of confession against Sweetums, Ltd. in the Court of Common Pleas of Philadelphia County, September Term, 1981, No. 3574. One of the debtors, Anthony Malagesi, is president and full-time manager of Sweetums, Ltd. Sweetums, Ltd. has not filed any petition under the Bankruptcy Code, however, if the appellant exercises its rights against this company it will be forced to cease operations. As a result, debtor Anthony Malagesi would lose his job and both of the debtors would lose their source of income.

On the same date the reaffirmation agreement was signed, May 10, 1983, the debtors along with their attorney personally attended the discharge hearing before the Bankruptcy Court. At this hearing the debtors informed the court that they wanted to reaffirm their debt to the appellant. The court directed the debtors and appellant to file a formal application requesting an order that court approval of the reaffirmation agreement was not required or in the alternative that the agreement was approved. On May 24, 1983 the Bankruptcy Court entered an order that court approval of the reaffirmation agreement was required and denied approval. Finally, on June 15, 1983 the Bankruptcy Court entered its order discharging the debtors.

### Discussion

The principal issue to be resolved on this appeal is whether a reaffirmation agreement concerning a non-consumer debt secured by real property requires bankruptcy court approval to be enforceable. It cannot be disputed that § 524 of the Bankruptcy Code, 11 U.S.C. § 524(c) and (d), provides for the reaffirmation of debts between a creditor and debtor prior to the discharge in bankruptcy:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—

(A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) entered into in good faith; and

(ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall—

(1) inform the debtor—

(A) that such an agreement is not required under this title, under non-bankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement;

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection,[1] if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor. (footnote omitted)

It is not disputed that the debt here is secured by real property and was incurred by the debtors in order to provide working capital for a business in which they have an interest. Furthermore, the requirements of § 524(c)(1) and (2) have been complied with in that the reaffirmation agreement was entered into on May 10, 1983 with the discharge granted on June 15, 1983 and the debtors have not rescinded the agreement. Finally, § 524(c)(3), which directs compliance with subsection (d) of § 524, provides for a discharge hearing which was conducted on May 10, 1983 (See brief for appellant at 11).

Appellant argues that because only subsection (c)(4) of § 524 speaks expressly of court approval in connection with consumer debts not secured by real property, all other reaffirmation agreements are automatically enforceable without court approval once the requirements of subsections (c)(1) through (3) are met. Accordingly, appellant argues, because this reaffirmation agreement concerns a non-consumer debt secured by real property and all the requirements of § 524(c)(1) through (3) have been met, the reaffirmation agreement between appellant and debtors is valid and enforceable without court approval.

■ Appellant's argument represents a sound statutory analysis and there is some authority which would seem to give it support. *In re Patterson*, 10 B.R. 150 (Bkrtcy.N.D.Ohio 1981); *In re Grimes*, 6 B.R. 943 (Bkrtcy.D.Kansas 1980); *In the*

*Matter of Coots*, 4 B.R. 281 (Bkrtcy.S.D Ohio 1980). However, although I believe the instant reaffirmation agreement is valid and enforceable, it is not because I conclude that it does not require court approval. Rather, the agreement will be approved because I conclude it was entered into voluntarily and is in the best interest of the debtor. A fair reading of the Bankruptcy Act and its legislative history leads to the conclusion that regardless of the nature of the underlying debt (consumer or non-consumer) or whether it is secured by real property, all reaffirmation agreements require court approval.

Congress in enacting § 524(c) and (d) intended that, "Every reaffirmation agreement to be enforceable must be approved by the court, and any debtor may rescind a reaffirmation for 30 days from the time the reaffirmation becomes enforceable." 124 Cong.Rec.S. 17406 (1978); U.S.Congr. & Admin.News 1978, pp. 5787, 6523. I find persuasive the reasoning of courts which have held that § 524(c) charges the court with the duty of determining what is in the best interest of the debtor in deciding whether to approve or disapprove a reaffirmation agreement. *In re Newsome*, 3 B.R. 626 (Bkrtcy.W.D.Va.1980). "[I]t is essential that creditors not be permitted to use their superior economic leverage to coerce reaffirmation of debts where such reaffirmation is not in the best interest of the debtor." *In re Farmer*, 13 B.R. 319, 320 (Bkrtcy.M.D.Fla.1981).

If one of the purposes of the discharge in bankruptcy is to provide a debtor with a fresh start, it is easy to see how creditors, using undue pressure because of his superior bargaining position, could thwart this purpose and saddle a debtor with a continuing obligation he is unable to meet. By requiring court approval of all reaffirmation agreements this objective of the Bankruptcy Code can be better effectuated. Furthermore, in the case of consumer debts not secured by real property, § 524(c)(4) must be read as imposing on the bankruptcy court the additional requirements of finding reaffirmation agreements

of this sort in the best interest of the debtor, entered into in good faith, and not imposing an undue hardship on the debtor.

The debtors were represented by counsel throughout these proceedings. They were fully informed of the legal effect and consequences of a reaffirmation agreement. Further, at the May 10, 1983 hearing before the Bankruptcy Court they were told that a reaffirmation agreement was not required by the Bankruptcy Code (See brief for appellant at 11). Finally, the debtors entered into the reaffirmation agreement in order to induce the appellant to forebear from executing on a judgment against Sweetums, Ltd. This business represents the debtors sole source of income and if the appellant were to exercise its rights under the judgment, Sweetums, Ltd. will be forced to cease operations, thus, depriving the debtors of their only real opportunity to make a fresh start.

Accordingly, I find the reaffirmation agreement between appellant and debtors to be in the best interest of the debtors and, thus, it will be approved.