**In re Gerald F. ECCLESTON, Debtor.**

**Bankruptcy No. 84–00534.**

United States Bankruptcy Court,
N.D. New York.

Dec. 22, 1986.

Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, N.Y., for Chase Manhattan Bank, N.A.; John T. Sullivan, Jr., of counsel.

James G. Cushman, Norwich, N.Y., for debtor.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The facts surrounding the present motion of The Chase Manhattan Bank, N.A. ("Bank") are not in dispute. Gerald F. Eccleston ("Debtor") filed a bankruptcy petition for relief under Chapter 11 of 11 U.S.C. §§ 101–151326 ("Code") on June 19, 1984. The Bank filed a proof of claim asserting a secured claim in the amount of $116,557.13. Debtor's case was voluntarily converted to one under Chapter 7 of the Code on June 13, 1985. By Order dated September 19, 1985, Debtor was granted a discharge pursuant to Code § 727. At the time of discharge, Debtor and the Bank had not entered into an agreement pursuant to Code § 524(c).

By motion dated February 24, 1986, the Bank sought to vacate the discharge for the sole purpose of effectuating a reaffir-

mation agreement with the Debtor. The Bankruptcy Clerk's office informed Bank's counsel that the case would have to be reopened pursuant to Code § 350 prior to Court consideration of the motion. Inexplicably, it was not until August 14, 1986 that the case was reopened, with the Bank then submitting the present motion.

The Bank has attached a copy of the proposed agreement to its motion papers. The copy is headed by a caption from Debtor's bankruptcy case, and is designated "Reaffirmation and Modification Agreement." It purports to be an agreement between the Bank, and Debtor and his spouse, (an individual previously unconnected to this case); the notarized signatures of Debtor and his spouse appear on the copy. Debtor apparently signed the agreement on May 22, 1986; his spouse apparently signed on May 17, 1986. The document does not contain the language required to be included by Code § 524(c)(2).

The Bank's motion papers also include an undated single page document purporting to be an attorney's declaration pursuant to Code § 524(c)(3); what the Court infers to be a "second page" to this document is attached, yet the references therein bear no connection whatsoever to the preceding declarations of counsel.

Debtor has not appeared nor otherwise offered evidence justifying the Court's grant of the relief sought by the Bank. Similarly, the Bank has failed to provide the Court with a legal basis for the relief, and has not supplied facts warranting the requested relief; in fact, the Bank waived the opportunity to present written evidence and/or argument of an equitable and legal nature for the Court's consideration. Thus, on the scant record offered for consideration, the Bank's motion is consequently denied.

Code § 524(c) allows a debtor to remain personally obligated post-discharge for a debt which is otherwise dischargeable. In order for such an agreement to be enforceable, it must be made prior to the grant of a discharge under Code § 727. Code § 524(c)(1). Further, the agreement must

contain "a clear and conspicuous statement" informing the debtor that it may be rescinded prior to discharge or within sixty days of the agreement being filed with the Court, whichever is later. Code § 524(c)(2). When the agreement is filed with the Court, it must be accompanied by a declaration or affidavit from the attorney who represented the debtor during the course of the negotiations for the agreement; this document must contain affirmations from the attorney that the debtor is fully informed and is voluntarily entering into the agreement, and that the obligations under the agreement will not pose an undue hardship on the debtor or his dependents. Code § 524(c)(3)(A) & (B).

 The above scheme must be construed to protect the debtor's interests, and not those of his creditors. *In re Roth*, 38 B.R. 531, 537 (Bankr.N.D.Ill.) *aff'd*., 43 B.R. 484 (1984). While Code § 524(c) was extensively revised by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, the legislative history surrounding enactment of the original Code provision reveals clear Congressional emphasis on the debtor's "fresh start", with a similarly strong concern for a debtor's relief from creditor pressure after bankruptcy. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess., 164 *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6125. The protective thrust of amended Code § 524(c) remains, even though primary responsibility for guarding the debtor's interests in reaffirmation agreements has been shifted to the attorney representing that party. The amendments left unaltered the unambiguous language of the section: reaffirmation agreements must be entered into *prior to* discharge to have legal significance. Those entered into after entry of a discharge are unenforceable, and are of no legal significance. *See In re Long*, 22 B.R. 152, 154 (Bankr.D.Me.1982); *In re Gruber*, 22 B.R. 768, 769 (Bankr.N.D.Ohio 1982); *G.F.C. Corp. v. Noland (In re Noland)*, 13

B.R. 766, 772 (Bankr.D.Kan.1981); *In re Grimes*, 6 B.R. 943, 947 (Bankr.D.Kan. 1980); *Winters Nat. Bank and Trust Co. v. Coots (In re Coots)*, 4 B.R. 281, 283 (Bankr.S.D.Ohio 1980).

The requirement that the reaffirmation agreement precede the debtor's discharge is recognized as well in Fed.R.Bankr.P. 4004(c). The rule provides that on debtor's motion, the Court may defer entry of a discharge order for 30 days; if a second motion is made during that time, the entry of the discharge order may be deferred to a date certain. This provision

> takes cognizance of § 524(c) of the Code which authorizes a debtor to enter into enforceable reaffirmation agreements only prior to entry of the order of discharge. Immediate entry of that order after expiration of the time fixed for filing complaints objecting to discharge may render it more difficult for a debtor to settle pending litigation to determine the dischargeability of a debt and execute a reaffirmation agreement as part of a settlement.

Fed.R.Bankr.P. 4004(c) advisory committee note.

Hence, assuming the documents attached to the Bank's motion papers are what they purport to be, the document signed by Debtor on or about May 22, 1986 is unenforceable against him.[1] Consequently, Debtor's discharge of September 19, 1985 must be vacated or revoked if the Court is to render relief on an application for reaffirmation.

 Code § 727(d) provides for revocation of a discharge upon the timely request of either the trustee or a creditor, and only if shown that the debtor has committed fraud or other acts of misconduct. The unequivocal language of the section limits its applicability to trustees and creditors; a debtor may not seek revocation of his discharge under Code § 727(d). Further, a creditor desiring revocation of a discharge must allege as grounds actions which are

---

**1.** The Court's pronouncement is limited to the affect upon Debtor only, not his spouse. As the Court does not have jurisdiction over the person of Cheryl L. Eccleston, no pronouncement as to the legal ramifications of her execution of the agreement are proper.

proscribed by the section. Under no circumstances is Code § 727(d) to be used as a vehicle for the revocation of a discharge for the "limited purpose" of effectuating a reaffirmation agreement. *In re Gruber, supra,* 22 B.R. at 769–70; *Winters Nat. Bank and Trust Co. v. McQuality (Matter of McQuality),* 5 B.R. 302, 303 (Bankr.S.D. Ohio 1980).

 Yet as a court of equity, the Court has the inherent power to vacate an order or decree. *State of Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. 421, 18 How. 421, 15 L.Ed. 435 (1855). Fed.R.Civ.P. 60(b) is made applicable to this proceeding by Fed.R.Bankr.P. 9024; that rule authorizes the court to relieve a party from a final judgment or order for "any ... reason justifying relief from the operation of the judgment." It is this "other reason" clause of Fed.R.Civ.P. 60(b) which empowers the Court to vacate an Order for Discharge when to do so would "accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). Bankruptcy courts have granted such relief when requested to do so by *debtors,* for the purpose of thereafter entering into viable reaffirmation agreements. *See, e.g. In re Long, supra; In re Solomon,* 15 B.R. 105 (Bankr.E.D.Pa.1981).

 However, a debtor seeking relief under Fed.R.Bankr.P. 9024 (Fed.R.Civ.P. 60(b)) must show "extraordinary" circumstances which prevented relief through usual channels. *Ackermann v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950); *Briney v. Burley (In re Burley),* 11 B.R. 369, 373 (Bankr.C.D. Cal.1981) *rev'd on other grounds,* 738 F.2d 981 (1984). The record herein is woefully inadequate to accord the relief sought by the Bank. To begin, assuming the present motion for consideration of the reaffirmation agreement had been timely made prior to Debtor's discharge, such would have to have been made by the Debtor himself. Neither Code § 524(c), nor Fed.R.Bankr.P. 4004 provide for or imply that a creditor may apply to the Court for reaffirmation of

the debt. As noted by Bankruptcy Judge Pearson:

> Simply put, to permit creditors to make application for reaffirmations would contravene the intent of Congress and permit in many instances the very acts which the Congress sought to condemn. It would be irony, indeed, if creditors could make application for reaffirmations which in and of itself could very well be coerced and nonconsensual.

*Peoples Bank of Pound v. Newsome (In re Newsome),* 3 B.R. 626, 629 (Bankr.W.D.Va. 1980). The Bank has not explained why disregard of this fundamental public policy is any more appropriate at this juncture than it would have been prior to Debtor's discharge. Debtor's apparent acquiescence to a new financial arrangement with the Bank cannot cloak the lender with standing to seek the requested relief. Further, even if Debtor had commenced or somehow joined in the present motion, the record is devoid of evidence warranting vacation of his discharge. Debtor's failure to apply for approval of the reaffirmation agreement prior to his discharge remains a mystery. Had the final details of such an agreement remained unresolved at the time of his discharge, Debtor's failure to move for an extension of time under Fed.R. Bankr.P. 4004(c) is unexplained. Additionally, the Court notes the five months transpiring between Debtor's discharge and the Bank's first attempt at revocation, and the nearly six months thereafter before the case was properly reopened and the present motion filed. These factors weigh against the Court's exercise of its equitable powers at present.

Should the Debtor address the Courts concerns in a future motion, providing sufficient explanation and justification therefor, the Court will judiciously consider the same. However, the foregoing deficiencies necessarily lead to denial of the Bank's motion to vacate the Order of Discharge in this case.

IT IS SO ORDERED.